IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
June 1, 2021 Session

## STATE OF TENNESSEE v. RUFUS STEVENS

**Appeal from the Criminal Court for Shelby County**
No. 18-06544    W. Mark Ward, Judge

### No. W2020-00499-CCA-R3-CD

The Defendant, Rufus Stevens, was convicted of aggravated rape, and the trial court sentenced him to serve eighteen years. On appeal, the Defendant contends that the trial court should have granted his motion to dismiss the indictment because the statute of limitations had run on the offense. The Defendant also contends that the trial court erroneously limited his questioning during voir dire and that it should have granted his motion to suppress several items of evidence. After review, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which D. KELLY THOMAS, JR. and J. ROSS DYER, JJ., joined.

J. Jeffrey Lee, Memphis, Tennessee, for the appellant, Rufus Stevens.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Gavin Smith, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Facts and Background

This case originates from the Defendant's rape of the victim, his twelve-year-old daughter, in 1983. In 2019, a Shelby County grand jury indicted the Defendant for aggravated rape.

### A. Voir Dire

Relevant to this appeal, during voir dire, counsel for the Defendant asked the prospective jury pool about "reasons that [the Defendant] or any witness might choose. . . ." The trial court interrupted defense counsel, and, in a sidebar, the trial court told both parties that they were not allowed to comment on why the Defendant might choose or not choose to testify. The trial court stated:

> You can't give all the good reasons why [the Defendant] might not testify without opening the door to all the bad ones. . . . . You can tell them in general, but not just reasons why. You can talk to them about the topic, but I find that when you put forth all the good reasons, it's not fair to the other side . . . and I usually . . . [tell the jury], . . . you can infer no reason, you can infer nothing [from a defendant's decision], you can't hold it against him. I'm not cutting you off from going in the area, just not asking [the jury venire] to speculate about reasons why he might not testify.

## B. Trial

The following evidence was presented at the Defendant's trial: The victim testified that she was the Defendant's daughter and that she was born in 1971. Her mother, who had since died, and the Defendant never married. The victim was twelve years old in 1983 and living with her mother. The victim spent time with the Defendant on weekends and during summer vacation. During those visits, the Defendant would pick the victim up from her mother's house and take the victim to the park. At the park, the Defendant would pull down the victim's pants or underwear and put his mouth on her vagina. The Defendant put his tongue inside the victim's vagina and played with her clitoris, causing her to "jump." The Defendant also put his fingers inside her vagina. Their visits to the park occurred around dusk. The sexual contact would occur inside the Defendant's vehicle.

The victim testified that this type of sexual contact occurred eight or nine times and ceased when she was about fourteen or fifteen years old. The victim testified that she told her mother at the time, who called her a liar and beat her. The victim also told her aunts and uncles. The victim stated that in 2012, the Defendant admitted to the victim's mother that he had done "this" to the victim when she was a child. The victim reported the Defendant's conduct to the police in 2018 and gave a statement.

The victim and law enforcement arranged for a recorded telephone conversation between the victim and the Defendant. According to the victim, during the recorded conversation, the victim told the Defendant that she remembered him digitally penetrating her and putting his mouth on her vagina. She testified that she told the Defendant his actions had caused her to have an anxiety attack. The victim stated that she asked the

Defendant, "didn't you stick your fingers in me and did you suck my vagina[?]" In response, the Defendant said, "Yes, I did, . . . Can we get past this?" The State sought to introduce the recording over the Defendant's objection. The victim identified her own and the Defendant's voice on the recorded telephone call. The recording, which is not included in the record, was played aloud for the jury. Prior to the playing of the recording, the trial court gave a limiting instruction to the jury, stating that the call was considered hearsay but that the Defendant's statements in the call were admissible and that the victim's portion of the call was being offered to provide context to his responses. The trial court instructed that the victim's portion, containing several assertions apparently made by family members, were not to be considered evidence. The trial court later reiterated this during jury instructions, when it instructed the jury how to consider statements made outside of court.

The victim testified that she tried to have a relationship with the Defendant and that she loved him. The victim stated that the Defendant took advantage of her because she could not tell him "no."

On cross-examination, the victim recalled her statement to law enforcement during which she said her mother beat her and called her a liar when she reported the Defendant's sexual contact. She recalled that her mother was "slow" and believed whatever the Defendant said. The victim did not have other adults in her life to whom she could disclose the abuse. She agreed that she had recently contacted the Defendant for money. The victim identified several recent photographs of her hugging the Defendant but denied feeling comfortable around him. The victim stated that she was abused by both her parents as well as in foster care.

The jury convicted the Defendant of aggravated rape, and the trial court sentenced him to eighteen years of incarceration. It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Defendant contends that: (1) the trial court abused its discretion when it denied his motion to dismiss the indictment because the applicable statute of limitations had run; and (2) the trial court erroneously limited his questioning of potential jurors during voir dire. The Defendant also contends that the trial court erred when it denied the Defendant's motion to suppress (1) the victim's recorded phone call with the Defendant; (2) the "prior statement of identification," made by the victim's mother and grandmother during the recorded phone call, both of whom were unavailable to testify; and (3) the victim's lay testimony regarding her mental illness.

3

## A. Statute of Limitations

The Defendant first contends that the trial court should have granted his motion to dismiss because the victim failed to prosecute within the applicable statute of limitations. He argues that the relevant statute of limitations, found at Tennessee Code Annotated, section 40-2-101 (1985 Supplemental Part), states that prosecution of the crime was mandated within four years of the offense or on the date the victim attained majority age. The State initially responds that, without a transcript of the hearing on the motion to dismiss, which is not included in the record, this court cannot review the trial court's actions, which are thus presumed to be correct. The State goes on to respond that the trial court reached the correct result because there was not an applicable statute of limitations for the crime of aggravated rape in 1983. We agree with the State.

We note that the Defendant failed to include a transcript of the hearing in the appellate record and did not seek to supplement the record with the transcript. *See* Tenn. R. App. P. 24(b) (providing that it is the appellant's duty to prepare a fair, accurate, and complete record on appeal to enable this court to conduct a meaningful review). "In the absence of an adequate record on appeal, this court must presume that the trial court's rulings were supported by sufficient evidence." *State v. Oody*, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991).

Notwithstanding our conclusion that the Defendant has failed to provide an adequate record for review, we conclude that the case was prosecuted within the applicable statute of limitations. The statute of limitations for felonies in Tennessee is found at Tennessee Code Annotated section 40-2-101. For one class of felonies, there is no statute of limitations: If the offense is punishable by death or by life imprisonment, the accused may be prosecuted and convicted "at any time after the offense is committed." T.C.A. § 40-2-101(a). In 1985, section 40-2-101, governing the time constraints on the prosecution of felony offenses, was amended. However, offenses occurring before the 1985 revisions in Tennessee Code Annotated section 40-2-101 remain subject to the previous statute of limitations. *State v. Tidwell*, 775 S.W.2d 379, 384 (Tenn. Crim. App. 1989). The State maintains, and we agree, that in 1983, at the time of this offense, the maximum punishment for the offense of aggravated rape was life imprisonment, and thus the Defendant could be prosecuted and convicted "at any time after the offense is committed." T.C.A. § 40-2-101(a). Therefore, the statute of limitations for this offense had not expired when the indictment was returned. Accordingly, the trial court did not err when it denied the Defendant's motion to dismiss the indictment. The Defendant is not entitled to relief.

## B. Voir Dire

4

The Defendant next contends that the trial court improperly limited his questioning of potential jurors during voir dire. He contends that questioning the potential jurors about the decision to testify is "intertwined" with the presumption of innocence, a topic which he contends, like the subject of reasonable doubt, is essential to his right to a fair trial. The State responds that the trial court properly exercised its discretion when it limited questions during voir dire and that the Defendant has not shown that he was prejudiced by the limitation. We agree with the State.

Jury selection implicates an accused's state and federal constitutional rights to a competent, fair-minded, and unbiased jury. *See Smith v. State*, 357 S.W.3d 322, 347 (Tenn. 2011) (recognizing that "[b]oth the United States and the Tennessee Constitutions guarantee a criminal defendant the right to a trial by an impartial jury.") "The ultimate goal of voir dire is to [e]nsure that jurors are competent, unbiased, and impartial." *State v. Cazes*, 875 S.W.2d 253, 262 (Tenn. 1994). The conducting of the voir dire of prospective jurors is in the discretion of the trial court. *Id.* Therefore, an appeal from a trial court's decision cannot be overturned by this court unless it is apparent that the trial court abused its discretion. *See State v. Mickens*, 123 S.W.3d 355, 375 (Tenn. Crim. App. 2003).

During voir dire, the trial court interrupted counsel for the Defendant before counsel asked the potential jurors about the Defendant's choice whether or not to testify at trial. The trial court stated that it would allow the topic of testifying to be raised but would not allow defense counsel to put forth reasons that the Defendant might not testify, in anticipation of the trial court's future instruction to the jury that it would not be permitted to make any inferences from the Defendant's decision whether or not to testify. The trial court chose to limit the questioning, in light of the Defendant's Fifth Amendment protections, which prohibits the State from commenting on a defendant's decision to not take the stand. *See State v. Jackson*, 444 S.W.3d 554, 586-87 (Tenn. 2014) ("[t]he subject of a defendant's right not to testify should be considered off limits to any conscientious prosecutor" and "indirect references on the failure to testify also can violate the Fifth Amendment privilege.") In light of the general protections surrounding a defendant's decision to testify, we conclude that the trial court did not abuse its discretion when it limited defense counsel's question, particularly in light of the fact that the State could make no comment to rebut it or explore the issue further. The Defendant is not entitled to relief on this issue.

### C. Admission of Evidence

The Defendant contends that the trial court erred when it denied the Defendant's motion to suppress (and overruled his objections to) the recorded telephone call between

5

the victim and the Defendant. He alleges that the telephone call itself was hearsay, specifically because it contains the statements of identification made by the victim's family members and the victim's lay testimony about her mental health. The State responds that the trial court's rulings were not in error. We agree with the State.

Generally, the Defendant argues that the recording of the telephone call was erroneously admitted because it was hearsay being used to prove the truth of the matter asserted, rather than "context." He contends that the trial court limited hearsay testimony about the statement and should have done the same with the recording. The State argues that, without the audio recording, this court cannot fully review the issue. We agree. *See* Tenn. R. App. P. 24(b) (providing that it is the appellant's duty to prepare a fair, accurate, and complete record on appeal to enable this court to conduct a meaningful review); *see also State v. Ballard*, 855 S.W.2d 557, 560 (Tenn. 1993) (holding that the failure to include the relevant transcripts precludes appellate review). If the record is incomplete and does not include a transcript of the proceedings relevant to an issue presented for review, an appellate court is precluded from considering the issue. *Id.* (citing *State v. Roberts*, 755 S.W.2d 833, 836 (Tenn. Crim. App. 1988)). "In the absence of an adequate record on appeal, this court must presume that the trial court's rulings were supported by sufficient evidence." *State v. Oody*, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991).

The Defendant next contends that the trial court erroneously admitted prior statements of identification, referenced by the victim in the recorded telephone call, from her mother and grandmother, both deceased at the time of trial. The Defendant has not identified which statements he is contesting and the telephone call recording is not included in the record. Again, this precludes our review. *See* Tenn. R. App. P. 24(b). Lastly, the Defendant contends that the trial court erroneously allowed the victim's statement about her "anxiety attack" to be admitted into evidence, without any expert witness foundation for this mental health condition. Arguments on this issue were heard, and the trial court ruled on the issue during a pre-trial hearing. A transcript of the hearing is not included in the record, which, as stated, precludes our review. *See* Tenn. R. App. P. 24(b).

In light of the presumption that the trial court properly admitted the audio recording, we briefly address the State's argument that the trial court properly limited the victim's hearsay testimony but allowed the recorded statement as an out-of-court statement of the Defendant, including the entire conversation to show the context of his statements. The State cites the trial court's instruction to the jury regarding the same, both during trial and during the jury charge.

We conclude that the trial court properly instructed the jury on the basis for its consideration of the recorded telephone call. *See State v. Carlos Jones*, No. W2008-02584-

6

CCA-R3-CD, 2010 WL 3823028, at *14 (Tenn. Crim. App., at Jackson, Sept. 30, 2010) (concluding "a witness's out-of-court statements are admissible if they provide a context for another person's statements . . . ."), *perm. app. denied* (Tenn. Mar. 9, 2011). This court stated in *Jones* that "[s]tatements designed to (1) provide a context for, or (2) permit an understanding of, another statement may not be hearsay." *Id.* (citing NEIL P. COHEN, ET AL., TENNESSEE LAW OF EVIDENCE, § 8.01[10], at 8-25 (5th ed. 2005); *State v. Price*, 46 S.W.3d 785, 804 (Tenn. Crim. App. 2000) (stating that the statements of a non-testifying codefendant were not offered to prove the truth of the matter asserted; instead, they were offered "for the purpose of providing the context of the defendant's statements"); *State v. Derrick Sorrell*, No. W2006-02766-CCA-R3-CD, 2009 WL 1025873, at *5 (Tenn. Crim. App., at Jackson, Apr. 8, 2009), *perm. to appeal denied*, (Tenn. Aug. 17, 2009) ("The audiotape contained a conversation between the defendant and a second person and cannot be barred by the Confrontation Clause because the conversation was not offered for truth, but instead for context and evidence of knowledge.")). Based on our review of the applicable law, the trial court correctly instructed the jury as to how it was to consider the audio recording and provided a proper basis, context, for admission of the recording. Accordingly, we conclude that the audio was not erroneously admitted. The Defendant is not entitled to relief.

### III. Conclusion

After a thorough review of the record and the applicable law, we affirm the judgment of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE